**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JASON LEOPOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-000123-RC |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DECLARATION OF JOHN F. HACKETT</u>**

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare and state as follows:

1.      I am the Acting Director of the Office of Information Programs and Services

("IPS") of the United States Department of State (the "Department").  In this capacity, I am the

Department official immediately responsible for responding to requests for records under the

Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. §

552a, and other applicable records access provisions.  I have been employed by the Department

in this capacity since March 2014.  Prior to assuming this role, I served as the Deputy Director of

IPS since April 2013.  As the acting IPS Director, I am authorized to classify and declassify

national security information.  I make the following statements based upon my personal

knowledge, which in turn is based upon a personal review of the records in the case file

established for processing the subject request and upon information furnished to me in the course

of my official duties.  I am familiar with the efforts of Department personnel to process the

subject requests, and I am in charge of coordinating the agency's search and recovery efforts

with respect to those requests.

2.     The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by Members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests;[1] (2) systematic review under the Executive Order; (3) records management; (4) privacy protection; (5) national security classification management and declassification review; (6) corporate records archives management; (7) research; (8) operation and management of the Department's library; and (9) technology applications that support these activities.

3.     The purpose of this declaration is (i) to describe to the Court the Department's plan to review approximately 55,000 pages of e-mails and attachments to those e-mails (the "55,000 pages") that former Secretary of State Hillary Clinton provided to the Department in December 2014 and to post the releasable portions of the 55,000 pages on the Department's website, and (ii) to provide a date by which the Department proposes to complete that review and production.

## I.  ADMINISTRATIVE PROCESSING OF PLAINTIFF'S REQUEST

4.     On November 14, 2014, plaintiff Jason Leopold submitted a FOIA request to the Department seeking every record prepared or maintained by the Department that mentions or refers to, or was prepared by, former Secretary of State Hillary Clinton, or anyone in the Office

---

[1] For example, in FY 2014, the Department received over 19,000 FOIA requests.  Additionally, the Department has received nearly 14,000 new requests since October 2014 and is currently engaged in nearly 80 FOIA litigation cases, many of which involve court-ordered document production schedules.  The Department's FOIA office is staffed with 63.5 fulltime employees to address these numerous FOIA requests and appeals, as well as FOIA litigation.

2

of the Secretary, for her entire tenure in office (Jan. 21, 2009 – Feb. 1, 2013).  Plaintiff also

requested a fee waiver and expedited processing of the request.

5.     On November 24, 2014, IPS acknowledged receipt of Plaintiff's FOIA request,

granted Plaintiff's request for a fee waiver, and denied his request for expedited processing.

6.     On January 7, 2015, IPS reached out to Mr. Leopold in an effort to discuss the

possibility of narrowing the scope of his broad, sweeping request, explaining that his request

would include hundreds of thousands of documents.  In addition, IPS explained that the retrieval,

analysis, and review of only the documents in the most relevant office would require years to

complete, even if IPS could utilize the full resources of the FOIA office to focus solely on this

case.

7.     On January 16, 2015, Mr. Leopold advised IPS that he would narrow the scope of

his request "by excluding any records that have already been made publicly available and basic

media summaries."

8.     On January 25, 2015, Mr. Leopold filed suit against the Department because it

had not responded to his request within the statutory time period.

9.     As detailed in the parties' Joint Status Report Regarding Schedule ("Jt. Status

Report") filed on March 20, 2015, the Department engaged in further negotiations with Plaintiff

regarding the scope of his request and noted that the Department was already in the process of

reviewing for posting on the Department's FOIA website the releasable portion of the 55,000

pages covering the period 2009-2013 that had been provided to the Department by former

Secretary Clinton.  The Department noted that this public release would substantially satisfy

Plaintiff's request.  At a Status Conference on April 8, 2015, the Court ordered the Department

*Leopold v. U.S. Dep't of State*
1:15-cv-000123-RC
Hackett Declaration

to provide a proposed schedule of production for Secretary Clinton's e-mails.  *See* Order (April 28, 2015), ECF No. 10.

## II. DEPARTMENT'S PLAN FOR THE REVIEW OF FORMER SECRETARY CLINTON'S E-MAIL RECORDS

10.     In December 2014, former Secretary Clinton provided to the Department paper copies of approximately 30,000 e-mails, comprising approximately 55,000 pages.  Secretary Clinton provided these records in response to a letter sent by the Department of State to former Secretaries requesting that, if former Secretaries or their representatives were "aware or [were to] become aware in the future of a federal record, such as an email sent or received on a personal email account while serving as Secretary of State, that a copy of this record be made available to the Department. . . if there is reason to believe that it may not otherwise be preserved in the Department's recordkeeping system."  *See* Ex. 1 (Text of Letter to Former Secretaries of State Concerning the Federal Records Act of 1950).

11.     Given the considerable public interest in the 55,000 pages, the Department plans to review the collection for public release, consistent with the FOIA, and make the releasable portions of the 55,000 pages available to the public by posting them on the Department's FOIA website.  This will make the maximum number of records available to the public in the shortest amount of time, and will be considerably more efficient than reviewing the documents piecemeal, in response to multiple subject-specific FOIA requests. [2]  The Department intends to

---

[2] Although this case does not require a search of former Secretary Clinton's emails for responsive records because plaintiff's FOIA request is for *all* of her records, any orders issued in other cases requiring the Department to conduct case-specific searches of former Secretary Clinton's emails before the whole collection has been posted on the Department's website could slow down the Department's processing of the collection.  Conducting such case-specific searches would take time and resources away from the broader review, the extent to which would depend on the breadth and complexity of those searches and FOIA requests.  For that reason, the Department has taken the position that it would be more equitable to all requesters to avoid conducting case-specific searches until the entire collection has been processed, but has been ordered to do one discrete search in at least one case thus far.  *Freedom Watch v. NSA*, Civil Action No. 1:12-cv-01088-CRC, Minute Order entered on May 4, 2015.  *See also* ¶ 16.

4

post the releasable portions of the collection at the conclusion of its review process, which will facilitate consistency in the application of FOIA exemptions and the public's access to and understanding of the documents.

12.     As noted above, the Department received the 55,000 pages in paper form.  The documents were provided in twelve bankers' boxes (approximately 24" x 15" x 10 ¼" in size) with labels placed on the outside of the boxes that corresponded approximately to the timeframe of the documents within a given box.  The Department initially performed tasks necessary to organize the records.  This included foldering, boxing, and creating a box level inventory of the records.  In consultation with the National Archives and Records Administration, the Department also conducted a page-by-page review of the documents to identify, designate, mark, and inventory entirely personal correspondence, i.e., those documents that are not federal records, included within the 55,000 pages.

13.     Given the breadth and importance of the many foreign policy issues on which the Secretary of State and the Department work, the review of these materials will likely require consultation with a broad range of subject matter experts within the Department and other agencies, as well as potentially with foreign governments.  These records are comprised of communications to or from the former Secretary of State, who was responsible for the overall direction and supervision of the full range of activities of the Department, which operates in approximately 285 locations around the globe.  The Department is committed to processing the 55,000 pages as expeditiously as possible, while taking into consideration the Department's other legal obligations.

14.     The Department has taken multiple steps to facilitate its review of the 55,000 pages.  It has developed an  approach for addressing the review, upgraded the capabilities of the

5

Department's processing software, and dedicated staff.  Currently, this project is staffed fulltime

by a project manager and two case analysts, as well as nine FOIA reviewers who devote the

entirety of their time at the State Department to this effort, plus other analysts and information

technology specialists who provide collateral assistance to this review in addition to their regular

duties.  The team managing this project has met daily since early April to implement and oversee

this large undertaking.

15.     Each page of the 55,000 must be individually hand-processed in order to ensure

that all information is being captured in the scanning process.  The scanning process itself

involves five steps that are time-consuming and labor-intensive.  These are: (1) scanning

(inserting barcode separator sheets between each document and its associated attachments and

then scanning the documents, which includes converting them for optical character recognition

["OCR"], and then inputting the resulting OCR-ed files into the system in batches based on

search segments); (2) scanning quality control (the scanned material is checked to ensure that

each document is scanned properly and to flag documents that need to be re-scanned); (3)

indexing (indexers review each scanned document to manually input bibliographic coding, such

as the "To," "From," "CC," "BCC," "Date Sent," and "Subject" fields associated with that

document into the system); (4) indexing quality control (a senior indexer reviews the indexed

documents to ensure that the bibliographic coding has been properly input into the system); and,

(5) duplicate detection resolution (the computer analyzes the indexed documents to identify

possible duplicates between the document being ingested and those documents that already exist

in the system).  Any possible duplicates that cannot be resolved (identified as an exact duplicate,

near duplicate, not a duplicate) by automated means are pushed forward for individual review for

manual adjudication.  This process was made even more complicated by the fact that some, but

not all, of the paper records that the Department received were double-sided.  It took the Department five weeks to perform the scanning process, which was completed recently in May. There will be further work required to load these into a searchable database, which will be completed by mid-June.

16.     In the weeks following the Department's receipt of the e-mails from Secretary Clinton, the Department conducted a separate manual review of a date-limited portion of the 55,000 pages to locate any that were responsive to requests of the House Select Committee on Benghazi.  As a result of that manual review, the Department located and produced to the House Select Committee 296 e-mails composed of approximately 850 pages.  In light of the public interest in those records and the fact that the Department already has identified them within the larger collection, the Department has prioritized the FOIA review of those 296 e-mails.  These 296 e-mails were therefore scanned first, following the procedures described above.  The review process for those e-mails included an initial review within the FOIA office, followed by consultations and review by Department subject matter experts and other U.S. Government agencies, as appropriate, for any documents containing information that originated with that agency and/or in which that agency has a vested interest.[3]  The Office of the Legal Adviser also reviewed these materials to ensure the proper application of FOIA exemptions.  All material that can be released from the 296 e-mails will be made publicly available on the Department's FOIA website.

---

[3] The Department reviews every FOIA request for U.S. Government interagency interests.  In some instances, as with some of the 296 e-mails discussed above, a document that originated with the Department of State may include information that originated with another U.S. Government agency.  In accordance with Department FOIA regulations, that document would be referred to the applicable agency for a release recommendation or determination.  The relevant agency then conveys its release recommendation or determination to the Department for response to the requester.  *See* 22 C.F.R. § 171.11(k)(3).

17.     The Department's review of the Benghazi e-mails has highlighted several factors that it expects will affect the timing of the review of the remaining e-mails provided by Secretary Clinton.  Like the Department of State itself, each of the U.S. Government agencies that need to review these documents deals with sensitive, emergent issues, which may require them to reallocate priorities and resources in response to changing events around the globe.  Thus, the amount of time that other agencies may need to review these documents cannot be predicted with precision.  The Under Secretary for Management has advised senior leadership in other government entities (Central Intelligence Agency, Department of Defense, Department of Justice, Office of the Director of National Intelligence, National Security Council, and the White Hourse) of this review and has asked for their assistance.  The Department has attempted to take into account these issues in developing its plan for the review and processing of the remaining e-mails provided by Secretary Clinton and in estimating the amount of time the review and processing will take.  It is, however, possible that the time required for the interagency review process could impact the Department's proposed review timeline.

18.     The Department's review of the rest of the remaining records in the collection provided by Secretary Clinton is underway.  As noted above, the Department's objective is to make this information available to the public as quickly as possible.

19.     The Department has begun to implement the following plan to review the remaining material in the 55,000 pages.  The collection has been separated into 300 segments of approximately 100 e-mails messages each.  The Department plans to post on its FOIA website all the releasable material in the collection after all of the e-mails have been reviewed using the following process, which involves ongoing, serial reviews of 10-segment batches:

*Leopold v. U.S. Dep't of State*
1:15-cv-000123-RC
Hackett Declaration

**Initial FOIA Office Review**

- Beginning in May, while scanning was still ongoing, the FOIA office began the review of the 55,000 pages. The FOIA office plans to review a batch (approximately 1,000 e-mails) each week and apply initial proposed redactions consistent with our FOIA practice.

**Consultation With Subject Matter Experts**

- The FOIA office then plans to send the batch to appropriate Department subject matter experts ("SMEs") for consultation and review within one week. These SMEs are drawn from the ranks of the Department's experienced foreign policy experts, who have continuing national security responsibilities. While SMEs are reviewing the first batch that the FOIA office has already reviewed, the FOIA office will begin reviewing the next batch.[4]

- At the end of the week, the Department plans for the SMEs to return the batch that they reviewed, at which time the FOIA office would incorporate any appropriate review recommendations from the SMEs. The time required to do this will naturally vary, depending on the extent of the feedback from the SMEs, but the Department plans to adjust its resource allocation to ensure that this is accomplished as quickly as possible.

**Agency Consultations**

- The FOIA office will then refer any e-mails in segments implicating other agencies' interests to those agencies for their review.

- The agencies will be asked to complete their review of each batch and return the materials to the FOIA office within one week.

- Upon receipt of feedback from the relevant agencies, the FOIA office will incorporate any appropriate review recommendations. As with the SMEs, the time required to do this will naturally vary, depending on the extent of the feedback from the agencies.

**Legal Review**

- After the SME and agency review, the FOIA office plans to provide the batch to the Office of the Legal Adviser for a review. The Office of the Legal Adviser will be asked to complete its review of the batch within one week.

- Upon receiving feedback from the Office of the Legal Adviser, the FOIA office will incorporate any appropriate review recommendations.

---

[4] Thus, in the first week, the FOIA office would review segments 1-10; in the second week, the FOIA office plans to send segments 1-10 to SMEs and begin reviewing segments 11-20.

*Leopold v. U.S. Dep't of State*
1:15-cv-000123-RC
Hackett Declaration

**Final Review**

- Any divergent recommendations among reviewing entities will be resolved through discussions.

- The Department plans to repeat the above process until all of the materials are reviewed.

- After all of the materials have been reviewed, the Department plans to conduct a final review of the records to ensure that similar subject matter has been redacted in a fashion that is both internally consistent and legally appropriate.

At the conclusion of this process, the Department will post all non-exempt material on the Department's publicly-available FOIA website.

20.     The Department's plan, as outlined above, would result in its review being completed by the end of the year.  To factor in the holidays, however, the Department would ask the Court to adopt a proposed completion date of January 15, 2016.  As noted above, the Department understands the considerable public's interest in these records and is endeavoring to complete the review and production of them as expeditiously as possible.  The collection is, however, voluminous and, due to the breadth of topics, the nature of the communications, and the interests of several agencies, presents several challenges, as described above.  Accordingly, the Department requests that the deadline for production of former Secretary Clinton's e-mails to Plaintiff, via the Department's production of the e-mails to the public on its FOIA website, be January 15, 2016.  This date is premised on the Department's good faith estimate of the time required to complete this involved, intensive process.  Should unanticipated circumstances, or circumstances beyond the Department's control, force any delay, the Department will, of course, keep the Court apprised of any such changes and seek modification of this deadline.

\* \* \*

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this ___18th___ day of May 2015, Washington, D.C.

_____

John F. Hackett

11

## Gerlach, Alec

| | |
|---|---|
| **From:** | State Department Press Office <usstatebpa@subscriptions.fcg.gov> |
| **Sent:** | Tuesday, March 10, 2015 5:28 PM |
| **To:** | Gerlach, Alec |
| **Subject:** | Letter Sent by the Department to Representatives of Former Secretaries of State |

March 10, 2015

State Department Press Corps,

Please find below the text of the October 28, 2014 letter sent by the Department to representatives of former Secretaries of State, including Secretaries Madeleine K. Albright, Colin Powell, Condoleezza Rice, and Hillary Clinton. The letter requested that copies of any federal record be made available to the State Department for preservation.

Full text of the letters follow:

Dear [Representative of former Secretary of State]:

The Department of State has a longstanding and continuing commitment to preserving the history of U.S. diplomacy, established in authorities under the Federal Records Act of 1950. I am writing to you, the representative of Secretary of State [NAME], as well as to representatives of other former Secretaries (principals), to request your assistance in further meeting this requirement.

The Federal Records Act of 1950, as amended, 44 U.S.C. chapters 29, 31 and 33, seeks to ensure the preservation of an authoritative record of official correspondence, communications, and documentation. Last year, in Bulletin 2013- 03, the National Archives and Records Administration (NARA) clarified records management responsibilities regarding the use of personal email accounts for official government business. NARA recommended that agencies refer to its guidance when advising incoming and departing agency employees about their records management responsibilities. This bulletin was followed by additional NARA guidance on managing email issued on September 15, 2014.  See enclosed.

We recognize that some period of time has passed since your principal served as Secretary of State and that the NARA guidance post-dates that service. Nevertheless, we bring the NARA guidance to your attention in order to ensure that the Department's records are as complete as possible. Accordingly, we ask that should your principal or his or her authorized representative be aware or become aware in the future of a federal record, such as an email sent or received on a personal email account while serving as Secretary of State, that a copy of this record be made available to the Department. In this regard, please note that diverse Department records are subject to various disposition schedules, with most Secretary of State records retained permanently. We ask that a record be provided to the Department if there is reason to believe that it may not otherwise be preserved in the Department's recordkeeping system.

The Department is willing to provide assistance to you in this effort. In the meantime, should you have any questions regarding this request, please do not hesitate to contact [Name of Agency Records Officer], A/GIS/IPS/RA, Agency Records Officer, at [(XXX) XXX-XXXX].

We greatly appreciate your consideration of and assistance with this matter.

Hackett Declaration
No. 1:15-cv-000123-RC
Exhibit 1

Sincerely,

Patrick F. Kennedy

Stay connected with the State Department Office of Press Relations:

Stay connected with the State Department:

This email was sent to gerlachja2@state.gov using GovDelivery, on behalf of: U.S. Department of State · 2201 C Street NW · Washington, DC 20520