UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD,<br><br>      *Plaintiff*,<br><br>      v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>      *Defendant*. | Civil Action No. 15-cv-123 (RC) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND COURT ORDER OF MAY 27, 2015**

The status report (ECF No. 22) ("Status Report") filed by Defendant U.S. Department of State ("the Department") and the Declaration of John F. Hackett ("Hackett Declaration") which accompanied it identified the reason the Department missed the Court's cumulative target for release of the emails provided to the Department by former Secretary of State Clinton ("Clinton emails"), explained the nature of the problem and why it was temporary, and described the basis for Mr. Hackett's professional assessment that the deficit could be made up over the August and September productions. Developments since the filing of the Status Report have only served to reinforce Mr. Hackett's conclusions that the deficit can be made up as planned and that, by September 31, the Department will be in compliance with the goals set forth in the Court's Order of May 27, 2015 (ECF No. 17) ("Scheduling Order"). There is no need for the Court to require those overseeing the review and release of the Clinton emails to divert their time and attention to produce the additional information Plaintiff requests. For these reasons, Defendant opposes Plaintiff's motion to amend the schedule order (ECF No. 24) ("Plaintiff's Motion").

**ARGUMENT**

As explained in the Hackett Declaration, the Inspectors General for the Department and for the Intelligence Community ("IC") raised concerns about the Department's evaluation of other agencies' equities and recommended that the Department's FOIA Office seek staff support from IC FOIA offices to assist in identifying IC equities.  Hackett Declaration ¶ 4.  The Department did so, and on July 15, 2015, IC reviewers from five different agencies arrived at the Department to perform preliminary screening of emails to identify their agencies' equities.  *Id.* ¶ 5.

A theme of Plaintiff's motion is that the addition of the IC reviewers in July makes it difficult, if not impossible, for the Department to catch up to the Court's goals by the end of September.  It is important to recognize, however, that the IC reviewers had only eight business days, until July 24, to screen documents for the July 31 release.  *Id.*  Yet in those eight days, the IC reviewers managed to screen enough emails to allow the Department to produce 2,206 pages on July 31.  To meet the Court's original target for July, the Department needed to produce 3,927 pages.  Based on these numbers, if the IC reviewers had had another eight days, let alone the full month, they would have been able to meet the target.[1]

Plaintiff further errs by misunderstanding the nature of the function performed by the IC reviewers.  They are conducting a relatively simple screening process to determine whether there are IC equities in the emails, not a full-scale FOIA review of the emails.  *see* Pl.'s Mot. ¶ 4.  The IC reviewers "perform preliminary screening of emails to identify their agencies' equities," and, "[w]hen an IC reviewer identifies an agency equity in an email, that email is sent to the relevant

---

[1] The cumulative 15% target for July 31 amounts to 7,869 pages.  The Department had produced 3,942 pages through June 30, leaving 3,927 pages for the July release.

agency for consultation." Hackett Declaration ¶ 5-6. The only new addition to the Clinton email review process is this preliminary screening step, which involves reviewers from each of the five agencies looking at each document to see if it should be referred to their agency for consultation. This process does not "duplicat[e]" the current review efforts, *see* Pl.'s Mot. ¶ 8; it proceeds at a far faster rate than the other steps in the review process and runs concurrently with other aspects of the review process.

Mr. Hackett previously stated that he expected the pace of the IC reviewers' preliminary screening to increase, Hackett Declaration ¶ 7, and this expectation has been borne out: as of Friday, August 14, the IC reviewers have completed preliminary screening on more than 23% of all of the Clinton emails, all since the IC reviewers' arrival on July 15. They will have six more working days to screen documents before the cut-off date for inclusion in the August 31 release, and 21 more working days after that to screen documents for the September 30 release. Thus, the preliminary screening process is on track to allow the Department to meet both the 23.4% revised cumulative target for August 31 set forth in Mr. Hackett's Declaration and the Court's 37% original cumulative target for September 31. The staffing is clearly sufficient, and there is no need for the Court to require the Department to provide information on such internal staffing issues as the number of full- and part-time IC reviewers.

Nor is there reason to believe that the new screening step is "certain to increase dramatically the number of pages referred to the five agencies," causing additional delay. Pl.'s Mot. ¶ 9. The Department has been reviewing, and continues to do so independently of the IC reviewers, all the documents for other agencies' equities, as it does in responding to all FOIA requests. *See* Hackett Declaration of May 18, 2015 ¶¶ 13, 16 & n.3, 19 (ECF No. 12-1)

("Previous Hackett Declaration").  Plaintiff's speculation of a "dramatic[ ]" increase in referrals is not supported by experience to date.  Out of a sample of approximately 20% of the Clinton emails, the IC reviewers have only recommended 305 documents—approximately 5.1%—for referral to their agencies for consultation.  Given the lack of support for Plaintiff's speculation, and its contradiction by what has happened during the IC screening process, there is no reason for the Court to grant Plaintiff's requests that the Department identity the five IC agencies[2] and the procedures in place at those agencies for reviewing referred documents.

The Hackett Declaration focused on the specific issue that led to the shortfall and the reasons why the problem was temporary.  The Department is on track to meet the new goal for the August production, consistent with Mr. Hackett's prediction.  The Hackett Declaration, as well as the additional facts disclosed in this filing, suffice to support the conclusion that Department will make up half the deficit in August and half in September.  The additional information requested by Plaintiff is simply unnecessary and would only detract from the Department's efforts to process the Clinton emails and meet all of its other FOIA deadlines.

* * *

For the foregoing reasons, the Department respectfully urges the Court to deny Plaintiff's motion to amend the scheduling order.[3]

---

[2] Plaintiff never states how the identity of the five agencies would assist the Court in evaluating Mr. Hackett's conclusions.

[3] This memorandum has been reviewed by members of the Department team overseeing the release of the Clinton emails, who have verified the representations made herein for accuracy.

Date: August 17, 2015				Respectfully submitted,

						BENJAMIN C. MIZER
						Principal Deputy Assistant Attorney General

						MARCIA BERMAN
						Assistant Branch Director

						*/s/ Robert J. Prince*
						ROBERT J. PRINCE (D.C. Bar No. 975545)
						United States Department of Justice
						Civil Division, Federal Programs Branch
						20 Massachusetts Ave., N.W.
						Washington, DC 20530
						Tel: (202) 305-3654
						robert.prince@usdoj.gov

						*Counsel for Defendant*