**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JASON LEOPOLD,<br><br>                    *Plaintiff*,<br><br>                              v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>                    *Defendant*. | Civil Action No. 15-cv-123 (RC) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR AN EXTENSION OF TIME TO COMPLETE PRODUCTION OF CLINTON EMAILS**

**INTRODUCTION**

Defendant U.S. Department of State ("State") has produced more than 43,000 pages of the emails of former Secretary of State Clinton ("the Clinton emails") in just over seven months. It has approximately 9,000 more pages to go. During this enormously complex undertaking, State missed sending to some of the necessary agencies approximately 7,000 pages that it had identified as requiring interagency consultation. This error did not come to light until three weeks before the January 29 deadline set by the Court for the final production of Clinton emails. Since discovering its oversight, State has moved diligently to process the documents and send them to the appropriate agencies for review, a process that was interrupted by the blizzard that struck Washington, D.C. over the weekend.

On January 22, State moved for a one-month extension of the January 29 deadline to enable it to complete the interagency consultation process for the 7,000 pages for which there was a need for additional interagency review. Def.'s Mot. (ECF No. 49). Plaintiff opposed, arguing that State did not provide sufficient information to support its request. Specifically, Plaintiff contends that State failed to provide detailed information to justify the need for an additional month to process these pages. Plaintiff also argues that State should have, but did not,

explain in detail why the error occurred in order to establish that it was responsible for it.  But the detailed information Plaintiff seeks is not necessary for the Court to determine that State's request for a modest 30-day extension to complete processing approximately 9,000 pages of emails, some 7,000 of which are still undergoing interagency review, is reasonable under the circumstances.  And State has candidly acknowledged—and regrets—that it was responsible for the failure to send the documents for consultation and that it was simply a mistake that occurred during the enormous undertaking of reviewing and processing the entire Clinton email collection in a compressed time frame.

Because State has shown good cause for an extension and because the extension is necessary to allow State to maintain the proper balance, established by Congress, "between the public's right to know and the government's legitimate interest in keeping certain information confidential," *Ctr. For Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003), the Court should grant the requested extension.

## ARGUMENT

### I.  STATE'S REQUEST FOR A 30-DAY EXTENSION TO COMPLETE PRODUCTION OF THE CLINTON EMAILS IS REASONABLE AND WAS SUPPORTED BY ITS MOTION.

In its extension motion, State explained that due to its oversight, there are 7,254 pages of Clinton emails for which interagency consultation is not complete.  It further explained what the interagency consultation process entails and that delivery of the documents to the other agencies was expected to be completed during the week of January 25.  State concluded that it expected to receive the documents back from the other agencies in time to allow for the processing that is necessary to post the documents by the end of February, and therefore sought a 30-day extension of the deadline.

Given the interagency consultation process and the effort required to finalize production of these emails, it is reasonable for State to request an additional 30 days to process the remaining 9,000 pages of emails without a detailed presentation of the number of pages of emails each agency needs to review, the date each agency received the documents, and the pages per day each agency has the ability to review, *see* Pl.'s Opp. at 4.  While such information might be desirable, time spent compiling such detailed information is time *not* spent working on the Clinton email project.

Nonetheless, State is able at this time to provide some additional information to the Court in support of its request.  The vast majority of the documents that still require interagency consultation have been sent to 18 agencies.  Some of those agencies received only a few pages, while others received thousands of pages each.  Many of the documents were sent to more than one agency.  In addition, State still needs to complete delivery to 12 more agencies.  State has experienced some difficulty contacting some of the appropriate agency personnel since the snow storm and is still making arrangements with some of the receiving agencies for secure delivery of the documents.[1]  Notwithstanding these issues, State still believes it can meet the February 29 deadline it requested before the snow storm.  The 12 agencies for which delivery is pending will receive only 304 documents in total—a small fraction of the total number of documents that remained to be sent out for interagency consultation.[2]  Half of the 12 agencies will receive fewer than 10 documents; only one agency will receive as many as 100 documents.

---

[1] The federal government was closed starting at noon on Friday, January 22, until noon Wednesday, January 27. Federal offices opened three hours late on Thursday.

[2] This total counts each document once for each agency that must receive it.  Thus, if a document is going to three of these agencies, it counts three times in the total.

Although State has impressed upon all the agencies the importance of returning the documents promptly, *see* Def.'s Mot. ¶ 5, State's request for an additional 30 days necessarily took into account the reality that the other agencies have their own FOIA obligations to attend to. When the documents come back from the other agencies, State needs time to consolidate and incorporate interagency recommendations, perform a legal review, resolve any disparate recommendations, and produce final releasable versions of those documents. *See id*. ¶ 3. Based on State's experience throughout the Clinton email review process, it sought an additional month to accomplish all of this.

This time could not have been shortened after the initial discovery of the oversight, as Plaintiff suggests, Pl.'s Opp. at 7. When State first became aware that some documents had not been sent to all the necessary agencies, it immediately began a document-by-document review of more than 4,600 documents. The staff conducting this review worked extensive overtime, including throughout the long weekend of January 16 through 18. During this review, for each document, State identified to which agencies the document still needed to be sent for consultation. State then prepared packages of documents for delivery to each agency. This required analysts to prepare a cover memo containing instructions for each agency and then to export or print, depending on whether the documents were to be sent by secure email or on paper,[3] each document to be sent to that agency, one document at a time. These electronic files or paper documents were then assembled into packages for each agency. This review and packaging was completed by Wednesday, January 20. Deliveries to agencies began the next day, and, as explained above, the vast majority of documents have been delivered.

---

[3] State sent documents to some agencies via secure email where available and appropriate. State sent paper copies to the remaining agencies. As noted above, delivery arrangements are still being finalized for a small portion of the remaining documents.

Plaintiff further misapprehends what was "unexpected" about this situation.  *See* Pl.'s Opp. at 5-6 (characterizing State as saying that the need for agency consultation was unexpected).  State has, of course, always been aware of the need for interagency consultation.  It raised this issue with the Court at the beginning of these proceedings.  In fact, it identified the affected pages as needing interagency review months ago.  What was unexpected was the discovery, three weeks before the final production deadline, that some of the emails had not been sent to all the necessary agencies.  State acknowledged that this was a mistake that was made in the course of carrying out this massive FOIA production project.[4]

Plaintiff's assertion that the 7,000 pages of emails were "lost" is also incorrect.  *See* Pl.'s Opp. at 7.  The emails were not lost, as was plain from State's motion.  Many, in fact were sent to *some* agencies for review, just not to all the necessary agencies.  However, at a time when State was focused on meeting monthly production goals, State failed to send these emails to some of the necessary agencies.  State believes that the Clinton email team's time is better spent working to correct the problem and complete production of the Clinton emails than, as Plaintiff suggests, *id.*, to investigate an oversight that occurred months ago and that has no bearing on the motion presently before the Court.  Nor is such an investigation necessary to prevent a future occurrence, as these are the last emails to be processed.

---

[4] Nor did State receive "an additional two weeks for unexpected events."  Pl.'s Opp. at 4-5.  While it is true State proposed an earlier deadline, it did so in the context of a schedule involving half as many interim releases as the schedule set by the Court.  State never proposed a final production deadline for a schedule involving monthly productions.  Rather, the Court adopted the final deadline proposed by Plaintiff.

II.     **STATE HAS ACKNOWLEDGED THE PUBLIC INTEREST IN FORMER SECRETARY CLINTON'S EMAILS AND IS WORKING HARD TO PRODUCE THE REMAINING DOCUMENTS WHILE ALSO ENSURING THAT OTHER AGENCIES CAN REVIEW THE RECORDS AND IDENTIFY INFORMATION THAT MUST BE WITHHELD.**

From the beginning of this process, as Plaintiff concedes, State has acknowledged the public interest in former Secretary Clinton's emails. State has devoted approximately half of its FOIA litigation reviewer resources, as well as approximately 40 other IPS employees, to reviewing and processing the Clinton emails to make them available to the public at large. *See* Third Decl. of John F. Hackett ¶ 4 (ECF No. 41-1) (discussing reviewer staffing). For the most part, it has met the interim goals for monthly productions set by this Court. State is now only asking for a modest one-month extension of the final deadline because, due to the fact that it did not timely send all emails for interagency consultations, it cannot meet the January 29 deadline, though it will post some emails on that date.

State regrets that it must seek this extension, but the extension is necessary to ensure that the emails are properly reviewed for public release. Upcoming electoral events, while admittedly important to the public, do not change the fact that State needs this reasonable amount of additional time to complete the final stage of this enormous and complex undertaking. *See* Pl.'s Opp. at 8-12. Nor is there any basis for Plaintiff's speculation that the emails to be produced on February 29 are somehow more "controversial" than the tens of thousands that have already been released, Pl.'s Opp. at 7-8. The order in which State released emails was based largely on the complexity of the necessary review process. Most of the documents released early in the process were those that required no interagency consultation. State next released, in general, those documents that only required consultation with one or two agencies. The remaining emails include many that required consultation with multiple agencies, but that does

not mean that these emails are more "controversial" than other emails, or that the oversight that led to them not being sent to all the necessary agencies was related to their substance.

## **CONCLUSION**

For these reasons and the reasons stated in its motion for extension, State respectfully requests that it be given one extra month, until February 29, 2016, to complete production of the Clinton emails.

Date: January 28, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Robert J. Prince*
ROBERT J. PRINCE (D.C. Bar No. 975545)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 305-3654
robert.prince@usdoj.gov

*Counsel for Defendant*